Franklin Process Company, Appellant, v. Western Franklin Process Company et al., Appellees.

Gen. No. 41,458.

Opinion filed January 22, 1941.

EDWARDS & ANGELL, of Providence, R. I., and SID-LEY, McPHERSON, AUSTIN & BURGESS, of Chicago, for appellant.

BARNEY L. HOLLOWICK and JAMES C. LEATON, both of Chicago, for appellees.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

A suit was commenced in chancery under "The Business Corporation Act" to liquidate the assets and business of defendant, Western Franklin Process Company. The liquidation has been completed and all creditors, except plaintiff, have received a 53 per cent dividend.

The controversy is whether plaintiff shall share equally in defendant's assets with other creditors. Plaintiff is both defendant's largest creditor and majority shareholder. The parties principally interested in this appeal are plaintiff and defendant's other creditors.

The superior court by its decree entered on May 23, 1940, found that plaintiff's claims should be subordinated to those of defendant's other creditors. The decree ordered plaintiff to refund from dividends paid on its claims the sum of $17,170.70 to pay the claims of all other creditors in full. Plaintiff brings this appeal from said decree of May 23, 1940.

Plaintiff's theory of the case is that as a creditor it is entitled to share in defendant's assets equally with other creditors. The validity of plaintiff's claims is not disputed. Plaintiff and defendant are separate corporations. Plaintiff can be both a shareholder and creditor of defendant. Therefore, as a creditor, plaintiff is entitled to the same treatment as defendant's other creditors.

Further that the trial court erroneously subordinated plaintiff's claims on the theory that defendant was plaintiff's instrumentality. This is not sufficient and is not supported by the record. The defendant's other creditors must show some act or representation of plaintiff by which they were prejudiced. They have not done so.

Defendant's theory of the case is that when the plaintiff filed its proceedings to liquidate the assets and

business of its subsidiary and filed its claims and sought to share pro rata with the other creditors in the distribution of assets, the creditors filed objections to the allowance of plaintiff's claims on a parity with other creditors owing to the fact that the receiver made no effort to do so; that plaintiff filed an answer which does not set up any new matter requiring a reply by the creditors and therefore none was filed; that no question on the pleadings was raised at any time in the trial court; that defendant's creditors do not question the fundamental rule that a shareholder may participate with other creditors in the distribution of the assets of a corporation but in this case the trial court was justified in subordinating the claim of the parent corporation plaintiff to the defendant's other creditors, not because claims of plaintiff were not valid, but that payment of its claims should be postponed until defendant's other creditors were paid in full, for the reasons:

(1) Defendant was so controlled and its affairs were so conducted as to make it merely an adjunct or instrumentality of the plaintiff; and

(2) Because the plaintiff so conducted itself with relation to the management and conduct of the defendant's business as to be guilty of an affirmative wrong which made it liable for the debts of its subsidiary.

Defendant's theory further sets forth that it is not essential that the element of fraud or other wrong be present to bring about a subordination of the parent's claim to that of its subsidiary's general creditors; that it is sufficient to show the dominance and control of the subsidiary by the parent; that the loss or injury arises automatically by the insolvency of the subsidiary.

The creditors set forth their theory of the case as follows:

1. That a parent and subsidiary relationship existed between plaintiff and defendant;

2. That the plaintiff so dominated and controlled the defendant that it was merely an agency or instrumentality; and

3. That the proof established that plaintiff was guilty in its conduct of the defendant of affirmative wrong.

They further state that it is not necessary to prove the third element to bring about a subordination of plaintiff's claims, however the court would have been justified in finding that element present.

We do not think there is any controversy as to the essential facts. The difference seems to arise as to the conclusions as a matter of law to be drawn therefrom. The main controversy arises between plaintiff and defendant's other creditors. The facts are substantially as follows:

1. Plaintiff is a Rhode Island corporation with its principal place of business in Providence. Defendant is an Illinois corporation with its only place of business in Chicago. The business of both corporations is dyeing, processing and selling yarn to the trade. Plaintiff also manufactures and sells dyeing machinery.

2. Plaintiff has been in business since 1910 and has about 1,100 shareholders. Plaintiff has a branch in Philadelphia. Plaintiff owns a controlling stock interest in plants at Greenville, South Carolina, Chattanooga, Tennessee, and Fingerville, South Carolina.

3. Defendant was organized about 1926 by W. F. Stahl by the name of Fibre Dyeing Company. The name was changed to Western Dyeing and Processing Company about 1931. The individuals primarily interested in the company were W. F. Stahl and L. G. Blessing.

It appears that W. F. Stahl of the Western Dyeing and Processing Company, which later became the Western Franklin Process Company, an Illinois corporation, made a trip to Providence, Rhode Island in February, 1936; that he endeavored to interest

the Franklin Process Company, plaintiff herein, in buying some of defendant's stock; that Mr. Stahl, who was vice president and general manager of the company which he represented, wanted to install the Franklin Process of dyeing; that the Franklin Process Company would not purchase an interest in the then Western Dyeing and Processing Company, unless they, the Franklin Process Company could purchase sufficient stock so as to control the company; that on May 13, 1936, an agreement was entered between the parties at which time the name of the Western Dyeing and Processing Company was changed to Western Franklin Process Company.

It further appears that the Franklin Process of dyeing was installed in defendant corporation, which required the purchasing of the necessary machinery amounting to approximately $40,000; that the agreement provided for seven directors of whom five are directors of Franklin Process Company and four officers, three of whom are officers of Franklin Process Co.; that preferred stock aggregating $50,000 was to be issued as representing all the net assets of Western Franklin Process Company, and $75,000 of preferred stock was to be issued to Franklin Process Company in return for cash or for machinery and equipment; that Franklin Process Company was to receive 4,000 shares of the 6,000 shares of common and 750 shares of the 1,250 shares of preferred stock to be issued; that this agreement was carried out and all of the directors and officers except Stahl and Blessing lived in Providence, R. I.

It further appears that when the name of said defendant corporation was changed to Western Franklin Process Company, the articles of incorporation were amended and new by-laws were prepared by Edward P. Jastram, attorney for Franklin Process Company, who decided to use the existing corporation; that all books of Western Franklin Process Company were to

be kept at Providence, R. I., and before the change said corporation had only one bank account at Main State Bank, but after the change two other accounts were opened, one in the First National Bank of Chicago, where all collections were deposited, and one in Providence, R. I.; that the Main State account was used only for pay roll and petty cash and all checks drawn on the Main State Bank were to be signed by the president or by a clerk designated in writing by the president and checks on any other banks were to be signed by any two designated as follows: William F. Stahl, president; William A. Traver, vice president; L. W. Jones, treasurer; Albro N. Dana, Secretary; Albro N. Dana, assistant treasurer, E. Bernard Graves, clerk; Austin F. Matthews, clerk. All were officers and directors of Franklin Process Company with the exception of Stahl and the last two named were employees of Franklin Process Company. They were neither officers, directors or stockholders of either of the companies. Mr. Albro Dana, who testified upon the trial, has been in the employ of Franklin Process Company for 20 years.

It further appears that Franklin Process Company, the Rhode Island corporation, has its principal place of business at 564 Eddy street, Providence, R. I., with a branch in Philadelphia, Pa.; that it owns the controlling interest in Southern Process Company, a Delaware corporation of Greenville, South Carolina, Central Process Company of Chattanooga, Tenn.; that it owns 100 per cent interest in Franklin Process Spinning Mill Corporation, of Fingerville, South Carolina; that the changed by-laws provide that all stockholders' meetings shall be held in Providence, R. I., at the principal office of the corporation; that all directors' meetings of Western Franklin Process Company were held at 564 Eddy street, Providence, R. I., and all minutes stated that the meetings were held at the office of the company at that address. Mr. Dana when testifying

stated that the offices of Franklin Process Company are located at 564 Eddy street, Providence, R. I., that the name of Western Franklin Process Company was not on the door at 564 Eddy street, Providence, R. I., and was not listed in the Providence telephone directory nor in the lobby of the building at that address.

It further appears that after May 13, 1936, Western Franklin Process Company did not borrow from any banks; that five cash loans were made by Franklin Process Company to Western Franklin Process Company, and all were paid back except $5,000. Mr. Dana testified that these loans were not brought to the attention of the board of directors of the Western Franklin Process Company and that no board of directors' action was ever taken with reference to the same. He procured the loan from Franklin Process Co. to Western Franklin Process Co. Mr. Stahl, president of Western Franklin Process Company, testified that he knew nothing about those cash loans until after they had been made and that he was never asked to approve them.

It further appears that all of Western Franklin Process Company's bills were paid by checks drawn in Providence, R. I., which would number about 100 a month; that all of said company's financial matters were transacted in Providence, R. I.; that Western Franklin Process Co. had no employees in Providence, R. I.; that Dana received no salary from Western Franklin Process Co.; that he kept the books of Western Franklin Process Co. in his office in the offices of Franklin Process Company; that he had general supervision of all credits extended by Western Franklin Process Co. and in case of a doubtful account, Mr. Stahl would submit it to him for approval; that each week Mr. Stahl, as general manager, would send a weekly report to Mr. Dana in Providence and that report set forth what the payroll and petty cash expense would be for Western Franklin Process Co. and Mr.

Dana would draw a check for that amount on the First National Bank of Chicago, and deposit it to the Main State account in Chicago to cover such withdrawals.

Many cases from other States, as well as cases decided by the federal court have been cited by both counsel in this case, showing a diversity of opinion as to what the law is relative to a situation such as this.

Appellant contends that the validity of plaintiff's claims is admitted; that plaintiff is entitled to the same treatment as defendant's other creditors; that in similar cases the courts have consistently upheld a parent corporation's claims against its subsidiary unless the objecting creditors have shown fraudulent use of the subsidiary which has prejudiced the creditors; that such proof has not been made in this case, and that therefore plaintiff's claims should stand on the same basis as any other bona fide claims.

On page 4 of its brief, appellee sets forth the controlling point of difference and relies on the following major premise:

"B. Upon insolvency of a subsidiary corporation, the parent corporation will not be permitted to file its claim in the proceedings and share in the proceeds of its subsidiary before other creditors are paid in full if the subsidiary has been a mere instrumentality of the parent corporation." And on page 5, it is stated:

"In a proceeding to liquidate the subsidiary it is not necessary to prove fraud, other affirmative wrong, or superior equity, to justify subordination by the court of the claims of the parent to that of the other creditors of the subsidiary, where the parent controlled the subsidiary to such an extent that it was a mere instrumentality."

We do not believe the relationship of the two corporations in this case, as disclosed by the evidence, would come under the rules of law just quoted.

*McDermott v. A. B. C. Oil Burner Sales Corp.*, 266 Ill. App. 115, was a case wherein the question as to the

liability of one corporation for the debts of another corporation was at issue. After citing the various cases which were applicable, this court said:

"It is an elementary and fundamental principle of corporation law that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected. The fact that the stockholders of two corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation. However, the legal fiction of distinct corporate existence will be disregarded when necessary to circumvent fraud, or where the corporation is so organized and controlled, and its affairs so conducted as to make it merely an instrumentality of another corporation. . . . In *New York Trust Co v. Carpenter,* 250 Fed. 668, 674, it was said:

" 'From an examination of many decisions, we venture to say that no corporation acting within its powers has been held liable for the debts of another corporation legally organized, because it controlled such corporation by reason of ownership of its stock, or otherwise, except by reason of contract or on grounds of agency, or of estoppel, or because the controlled corporation has been used in such a way that the maintenance of its character as a separate and distinct entity would work injustice.' . . . In *Davis v. John R. Thompson Co.,* 239 Ill. App. 469, 475, the court said: 'Even in cases where a corporation sued owned the whole or practically all of the stock of the corporation which caused an injury, and where such corporation, through the election of its board of directors, had the practical control of the corporation causing the injury, still, unless the corporation sued actually possessed or operated, through its board of directors, the corporation that caused the injury, or there was a joint or partnership operation, the corporation sued has been held not liable.' . . . Continuing, the

court said on p. 477; 'The mere fact that two corporations may have certain persons who are managing officers in both corporations, in and of itself, will not render one corporation liable for injuries caused by the other.' "

In the instant case, as in the case we have just cited, it is not claimed there was any fraud, actual or constructive, and in that regard this court in the *McDermott* case *supra,* said:

"It is not claimed there was any fraud, actual or constructive, in the organization of the Sales Corporation, and there is no evidence that the Automatic Corporation participated in the affairs of the Sales Corporation except in the normal and usual manner of a stockholder; on the contrary, the business of the two corporations is entirely separate and distinct, and we have been unable to discover any evidence which would warrant disregarding the corporate entity existing between the two corporations on the ground of agency or estoppel, or because justice required it. Under such circumstances, the evidence is insufficient to sustain a judgment against the Automatic Corporation." (Citing, *General Motors Corp. v. Moffett,* 27 Ohio App. 219, 160 N. E. 878; *Louisville Gas & Electric Co. v. Moore,* 215 Ky. 273; *Perry v. Ohio Valley Elec. Ry. Co.* 70 W. Va. 697; *Pullman's Palace Car Co. v. Missouri Pac. Ry. Co.* 115 U. S. 587, 596; *Peterson v. Chicago R. I. & P. R. Co.,* 205 U. S. 364; *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U. S. 333, 335; *Chicago Hydraulic Press Brick Co.. v. Campbell,* 116 Ill. App. 322.)

. . .

"In *Berkey v. Third Ave. R. Co.,* 244 N. Y. 84, 87, Mr. Justice Cardozo held that stock ownership alone would be insufficient to charge a dominant company with liability for the torts of a subsidiary. See also *Costan v. Manila Electric Co.,* 24 Fed. (2d) 383; *Owl Fumigating Corp. v. California Cyanide Co.,* 24 Fed. (2) 718;

*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.* 31 Fed. (2d) 265. The mere fact that two corporations have the same officers and stockholders does not render one of the corporations liable for torts committed by the other. (*Great Salt Lake Amusement Co. v. Lagoon Amusement Co.* (Utah), 294 Pac. 301.)''

Counsel for appellee on page 35 of their brief make a statement with which we agree, and that is, that neither our Supreme Court nor the Appellate Court have ever passed directly upon the question as to when the parent's claims will be subordinated to that of other creditors in a liquidation of a subsidiary. *Detroit Motor Appliance Co. v. General Motors Corp.*, 5 F. Supp. (District Court E. D. Illinois) 27.

We do not think that a statement of the general rule does anything to support appellee's contention. We believe the rule to be, after an examination of the various decisions throughout this country, that unless it appears that the creditors who are here preferred, suffered some special injury by reason of the acts of the parent corporation, they cannot obtain a preferment over the parent corporation. In this case it has not been shown by the evidence that the so-called parent corporation has done anything which would prejudice the rights of the other creditors and, therefore, we cannot find any reason in law as to why all the creditors including the appellant in this case should not participate on an equal basis in the payment of its claims. As we have stated, there is no evidence of wrongdoing, no misrepresentation which caused the creditors to extend credit, no fraud, no mismanagement, no diversion of the subsidiary's assets to the parent corporation and no comingling of the assets. The assets of the insolvent corporation and the plaintiff in this case were always kept separate and distinct. The fact that the subsidiary corporation was not able to continue business, but when sold paid its creditors 53 per cent of the claims, does not establish

a situation wherein appellant should not stand on an equal basis with all other creditors having valid claims.

For the reasons herein given the decree of the superior court is reversed and the cause is remanded with directions to allow and decree the payment of the claim of the appellant on a parity with the other claims.

*Decree reversed and cause remanded with directions.*

HEBEL, P. J., and BURKE, J., concur.