WALTER E. HELLER & COMPANY, INC., Plaintiff-Appellee, *v.* CONVALESCENT HOME OF THE FIRST CHURCH OF DELIVERANCE *et al.,* Defendants-Appellants.—(BURROUGHS CORPORATION *et al.,* Cross-Defendants-Appellees.)

First District (5th Division)   No. 76-67

Opinion filed March 25, 1977.—Modified on denial of rehearing July 8, 1977.

Bernard Allen Fried, of Chicago, for appellants.

Rosenthal and Schanfield, of Chicago (Harvey J. Barnett and Bruce A. Spear, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants, Convalescent Home of the First Church of Deliverance (Convalescent Home) and First Church of Deliverance (First Church), appeal from a judgment on the pleadings in plaintiff's favor in the amount of $7,137.82 plus interest for rent due on an equipment lease. They contend (1) the complaint was defective because it failed to comply with section 22(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 22(1)) concerning suits by assignees and because it misjoined the principal obligor, Convalescent Home, and its guarantor, First Church, in the same action; (2) the equipment lease was unconscionable, lacked mutuality and contained inconspicuous disclaimers of warranties, and (3) plaintiff, as lessor Mutual Leasing Associates, Incorporated's assignee, was subject to defenses assertable against its assignor.

Plaintiff's verified complaint alleged that Convalescent Home entered into a lease for computers with Mutual Leasing Associates, Inc., as lessor, on or about April 1, 1972. Incorporated into the complaint was the lease which provided:

> "4. Warranties. Lessor will include as a condition of its purchase order that the supplier authorize Lessee to enforce in its own name all warranties, agreements, and representations, if any, which may be made by the supplier to Lessee or Lessor, but Lessor makes no

express or implied warranties as to any matter whatsoever, including, without limitation, the condition of the equipment, its merchantability or its fitness for any particular purpose. No defect or unfitness of the equipment shall relieve Lessee of the obligation to pay rent or of any other obligation under this Lease. Lessor shall not be liable for any damages caused by defects or breakdown of the equipment.

\* \* \*

26. Assignment \* \* \*

Lessor may assign or sell this Lease and/or mortgage the equipment, in whole or in part, without notice to Lessee, and its assignee or mortgagee may reassign this Lease and/or such mortgage, without notice to Lessee. Each such assignee and/or mortgagee shall have all of the rights but none of the obligations of Lessor under this Lease. Lessee shall not assert against the assignee and/or mortgagee any defense, counterclaim or offset that Lessee may have against Lessor. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, legatees, personal representatives, survivors and assigns of the parties hereto.

\* \* \*

### ASSIGNMENT

To *Walter E. Heller & Company, Inc.*

To induce you to purchase the within Lease Agreement, undersigned warrants that it is genuine and represents a valid obligation of a bona fide lessee (hereafter called 'Lessee'), all names, addresses, amounts, dates, signatures and other statements and facts contained therein are true and correct, the Equipment described therein has been previously duly delivered or installed, as applicable, and accepted by Lessee, the Lease Agreement and any guaranty in connection therewith are and will be legally enforceable by you as the assignee thereof in the State(s) where the Lessee and Equipment covered thereby are located; the Lease Agreement evidences a valid reservation of title to the described Equipment effective as against all persons, the Lease Agreement is and will be free from any liens, setoffs, counterclaims and other defenses, undersigned has properly and timely filed or recorded said Lease Agreement as required under all applicable filing and recording statutes: undersigned has the right to assign the Lease Agreement, and this Assignment conveys good title to the Lease Agreement and Equipment described therein, free and clear of any other liens and encumbrances whatsoever.

For value received, the undersigned hereby sells, transfers and assigns to you all its rights, title and interest in and to said Lease

Agreement and Equipment described therein, and all undersigned's rights and remedies thereunder, including without limitation the right to collect any installment due thereon and to take any action thereunder which undersigned might otherwise take.

All the terms of any existing written agreements between the undersigned and you are made a part hereof by reference and undersigned understands that you rely upon the above warranties and upon said agreements in purchasing said instrument."

The assignment was dated June 1, 1972, and signed by a vice-president. First Church guaranteed the lease and payment obligations of Convalescent Home in a separate guaranty instrument which was also incorporated into the complaint and provided "This guaranty shall bind our respective heirs, administrators, personal representatives, successors and assigns, and shall ensure to your successors and assigns." The complaint further alleged that since September 1, 1974, Convalescent Home failed to pay its monthly rental despite plaintiff's demands. It prayed for judgment against defendants jointly and severally in the amount of $7,137.82 plus interest, attorney's fees and costs.

Defendants' initial answer alleged that the computers were inadequate for their needs and that Burroughs Corporation, the supplier of the computers, had unsuccessfully attempted to insert a suitable computer program to meet defendants' needs. Attached to the answer was a letter, dated August 15, 1974, from defendant Convalescent Home to Burroughs Corporation notifying them of a termination of "our contract" in 30 days.

Defendants also filed a third-party complaint against plaintiff, Mutual and Burroughs alleging reliance upon Burroughs' representations as to the computer's capabilities and a "reprehensible scheme" by cross-defendants whereby defendants would be liable for payments without any obligations by cross-defendants.

On May 2, 1975, the trial court granted motions by Mutual and plaintiff to strike defendants' answer and third-party complaint and allowed defendants 28 days to replead.

On June 5, 1975, the trial court found that defendants had failed to replead and dismissed third-party defendant Burroughs with prejudice.

Defendants later filed an amended answer which alleged that the lease attached to the complaint failed to include the purchase order between the lessor Mutual and its supplier Burroughs, that the warranty disclaimers were inconspicuous, that Mutual failed to assign its rights against Burroughs to defendants, that the lease was unconscionable and lacked mutuality, that plaintiffs had repossessed the computers from defendant Convalescent Home and unfairly resold them, that defendants had terminated the lease after Burroughs' efforts to adapt the computer

were unsuccessful, that plaintiff failed to comply with section 22(1) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 22(1)), and that the complaint failed to allege the guaranty had been assigned to plaintiff.

On June 24, 1975, the trial court denied defendants' motion to vacate its prior dismissal of Burroughs and found that there was no just reason for delaying enforcement of an appeal from its order.

Thereafter, plaintiff moved to strike defendants' amended answer and for a judgment on the pleadings alleging that defendants' answer raised insufficient defenses as a matter of law.

The trial court granted plaintiff's motion on November 6, 1975, and defendants appealed from that order.

OPINION

Defendants contend plaintiff's complaint was defective because it improperly joined the principal obligor and its guarantor in the same suit and because it failed to comply with section 22(1) of the Civil Practice Act concerning suits by assignees.

■■ Defendants' joinder argument was not presented in the trial court and therefore is waived. Ill. Rev. Stat. 1975, ch. 110, par. 42(3); *Berry v. Berry* (1975), 32 Ill. App. 3d 711, 336 N.E.2d 239.

■■ Defendants contend that the verified allegation "on or about June 1, 1972, Mutual Leasing Associates, Inc., assigned to plaintiff all of its right, title and interest in the aforesaid lease, as set forth on the face of said lease" is insufficient to comply with section 22(1)'s requirement that the assignee of a nonnegotiable chose in action "shall in his pleading on oath allege that he is the actual bona fide owner thereof, and set forth how and when he acquired title." (Ill. Rev. Stat. 1975, ch. 110, par. 22(1).) In addition to the specific allegation, plaintiff's verified complaint incorporated the equipment lease which contained a provision allowing the lessor to assign its rights under the lease and an actual assignment to plaintiff dated June 1, 1972, and executed by a vice-president. We believe the complaint's allegation, assignment provision and executed assignment more than satisfy the requirements of section 22(1). *Cf. Alexander v. State Savings Bank & Trust Co.* (1935), 281 Ill. App. 88.

Defendants next contend the equipment lease was unconscionable, lacked mutuality, and contained inconspicuous disclaimers of warranties. They argue that the provisions of article 2 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—101 *et seq.*) should apply because an equipment lease is a "transaction in goods" under section 2—102 of the Code. (Ill. Rev. Stat. 1975, ch. 26, par. 2—102.) Whether or not article 2 of the Commerical Code applies to equipment leases is an issue of first impression in this State. The essence of both transactions is that the lessee/buyer seeks to acquire the right to use goods and the lessor/sellor

seeks to sell the right to use the goods. As the court in *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House* (N.Y. Civ. Ct. 1969), 59 Misc. 2d 226, 298 N.Y.S.2d 392, *rev'd on other grounds* (1970), 64 Misc. 2d 910, 316 N.Y.S.2d 585, stated:

> "In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result." *Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House* (N.Y. Civ. Ct. 1969), 298 N.Y.S.2d 392, 395.

For these reasons we believe that certain provisions of article 2 should be applied by analogy to equipment leases. *KLPR TV, Inc. v. Visual Electronics Corp.* (8th Cir. 1972), 465 F.2d 1382; *W.E. Johnson Equipment Co. v. United Airlines, Inc.* (Fla. 1970), 238 So. 2d 98; *Cintrone v. Hertz Truck Leasing & Rental Service* (1965), 45 N.J. 434, 212 A.2d 769.

■■ Although we will apply article 2 where applicable to equipment leases, we reject holdings, such as *In re Vaillancourt* (D.Me. 1970), 7 U.C.C. Rep. Serv. 748 and *Owens v. Patent Scaffolding Co.* (N.Y. Sup. Ct. 1974), 77 Misc. 2d 992, 354 N.Y.S.2d 778, which apply the article *in toto* on the theory that an equipment lease is a "transaction in goods" under section 2—102. While equipment leases have become a widely used substitute for purchase, there are significant differences between a lease and a sale including the transfer of title, risk of loss, taxes, financial considerations, and bankruptcy proceedings. Moreover, article 2 specifically applies certain provisions only to buyers, sellers, and contracts for sale. Thus, we believe that substantial internal conflicts would be created by holding that article 2 applies directly and *in toto* to an equipment lease. Anderson, Uniform Commercial Code §2—102: 4.1, at 181 (Cum. Supp. 1970-74).

Consequently, we will analogize the provision of article 2 to equipment leases only when the case involves the same considerations which gave rise to the Code's provisions and the analogy is not rebutted by the specific circumstances of the case. See *Glenn Dick Equipment Co. v. Galey Construction, Inc.* (1975), 97 Idaho 216, 541 P.2d 1184.

Defendants argue that the equipment lease cannot be enforced because it was unconscionable when made. Section 2—302 of the Code provides that a court may refuse to enforce all or part of a contract found to be unconscionable at the time it was made. (Ill. Rev. Stat. 1975, ch. 26, par. 2—302.) A contract is unconscionable when it is improvident, totally one-sided or oppressive. (*Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 334 N.E.2d 435.) Although the courts will readily apply this doctrine to contracts

between consumers and skilled corporate sellers, they are reluctant to rewrite the terms of a negotiated contract between businessmen. Compare *Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965), 350 F.2d 445, with *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.* (1973), 89 Nev. 414, 514 P.2d 654.

■■ We believe that the reasoning behind the unconscionability doctrine and the circumstances of the instant lease require that the doctrine should be applied to the case (See *Fairfield Lease Corp. v. Pratt* (1971), 6 Conn. Cir. Ct. 537, 278 A.2d 154.) However, when applied here, defendants can find no solace for their contention. The instant lease gives rights and imposes duties upon both the lessor and the lessee. While certain provisions favor one party over the other, all provisions were agreed to by corporations of substantially equal bargaining strength. For this reason the equipment lease was not unconscionable when made.

■■ Defendants also argue that the common law contract doctrine of mutuality of obligation has not been met because Mutual's duty to lease the computers was conditional upon Burroughs, its supplier, fulfilling the terms of the purchase order. Want of mutuality is no defense where a contract is executed or where a party who was not bound to perform does perform. (*Hall v. Gruesen* (1959), 22 Ill. App. 2d 465, 161 N.E.2d 345; 1A Corbin, Contracts §152, at 4-6 (1963).) In the instant case, even if we were to assume that Mutual's obligation to lease was illusory when made, Mutual did, in fact, lease the computer to defendants for two years. In light of this flow of the stated consideration from Mutual to defendants, we cannot say the equipment lease fails for lack of mutuality.

■■ Defendants next contend that the lease's disclaimers of warranties cannot be enforced because they were inconspicuous. Other jurisdictions have applied the Code's warranty provisions to equipment leases (*W.E. Johnson Equipment Co. v. United Airlines, Inc.* (Fla. 1970), 238 So. 2d 98) based upon factors such as whether the lessor possessed an expertise in the leased goods, whether the lessee's reliance upon the lessor's selection of suitable goods was commercially reasonable and whether the transaction was an isolated occurrence. Moreover, in *Baker v. City of Seattle* (1971), 79 Wash. 2d 198, 484 P.2d 405), a warranty disclaimer in an equipment lease was ineffective under section 2—316 because it was not conspicuous. Because the defendant lessees here were engaged in an isolated occurrence involving goods about which they could reasonably rely upon plaintiff's expertise we will similarly apply the principles of section 2—316 to the instant transaction.

■■ Section 2—316(2) provides that contractual language disclaiming the implied warranties of merchantability and fitness must be conspicuous. (Ill. Rev. Stat. 1975, ch. 26, par. 2—316(2).) A term is conspicuous when it is written so that a reasonable person ought to have

noticed it, and, if placed within the body of a form, if it is in a larger type. (Ill. Rev. Stat. 1975, ch. 26, par. 1—201(10).) In this case the disclaimer appears under the heading "Warranties." on the front of the lease agreement in a larger type size than other provisions within the two page agreement. (See *Alan Wood Steel Co. v. Capital Equipment Enterprises Inc.* (1976), 39 Ill. App. 3d 48, 349 N.E.2d 627.) Unlike the defective disclaimer in *Baker* which appeared in the middle of that lease in exactly the same size print, the highlighted language here clearly is conspicuous under the Code. Therefore, we reject defendants' argument.

■■ Finally, defendants contend that even if the lease agreement was properly formed and is enforceable, plaintiff as lessor's assignee, was subject to other defenses which defendants could have asserted against the assignor. We note that the provisions of the lease allow the lessor to assign the lease and state that "Lessee shall not assert against the assignee * * * any defense, counterclaim or offset that Lessee may have against Lessor." (*Allis-Chalmers Credit Corp. v. McCormick* (1975), 30 Ill. App. 3d 423, 331 N.E.2d 832.) Similar waiver clauses have been upheld in security instruments (*First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 205 N.E.2d 780) and installment sales contracts. (*Commercial Credit Corp. v. Biagi* (1956), 11 Ill. App. 2d 80, 136 N.E.2d 580.) Section 9—206(1) of the Code was amended in 1965 to provide that a lessee's waiver of defense against his lessor's assignee is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument. (Ill. Rev. Stat. 1975, ch. 26, par. 9—206(1).) Thus, we believe that a waiver of defense clause is enforceable under Illinois law.

■■ Defendants alternatively argue that plaintiff is not an assignee in good faith citing *Star Credit Corp. v. Molina* (1969), 59 Misc. 2d 290, 298 N.Y.S.2d 570, and *Commercial Credit Co. v. Childs* (1940), 199 Ark. 1073, 137 S.W.2d 260. In those cases, the courts acted to protect consumers from assignments which were mandated by nonnegotiable contracts or which were designed to insulate the seller from the defense of failure of consideration. In contrast, the equipment lease here was an arrangement between corporate entities and the equipment was delivered to and used by defendants for two years before they terminated their payments. In light of these facts we are not persuaded by the holdings in the cited cases.

However, an assignee seeking the protection of section 9—206(1) of the Code must have its good faith measured by the Code's good faith standard. Section 1—201(19) of the Code defines good faith as being "honesty in fact in the conduct or transaction concerned". (Ill. Rev. Stat. 1975, ch. 26, par. 1—201(19).) Thus, the test of good faith is a subjective

standard to be determined by the facts of each case. Consequently, the defense of lack of good faith by plaintiff presents a factual issue which cannot be resolved purely as an issue of law because of the importance of the effective date of the lease, the date of assignment of the lease, and any other evidentiary matters relevant to plaintiff's honesty in fact in this particular transaction. Therefore, we believe that on this contention it was error to dismiss the amended answer on the grounds that it raised an insufficient defense *as a matter of law.*

For the reasons given we reverse the judgment of the circuit court and remand this cause for further proceedings not inconsistent with this opinion.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.