**FMC FINANCE CORPORATION, Plaintiff–Appellee,**

v.

**Albert D. MURPHREE, Jr. and Dorothy E. Murphree, Defendants–Appellants.**

No. 78–1834.

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1980.

---

**52.** *See, e. g.*, 360 I.C.C. at 872, 881, 897.

Charles C. Jacobs, Jr., John Kirkham Povall, Cleveland, Miss., for defendants–appellants.

Lake, Tindall, Hunger & Thackston, Charles S. Tindall, III, W. Wayne Drinkwater, Jr., Greenville, Miss., for plaintiff–appellee.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Plaintiff FMC Finance Corporation (FMC Finance) brought this diversity action to enforce an unconditional personal guaranty contract of payment against the defendant guarantors, Albert D. Murphree, Jr., and Dorothy Murphree. The guaranty contract covered payment of monies that a closely held Georgia corporation, Perimeter Express, Inc., owed to FMC Finance under a lease agreement. At the close of the defendants' presentation of their evidence, the district judge granted FMC Finance's motion for a directed verdict. After entry of the judgment, the defendants filed and the district court denied a motion for a new trial.

Under the standard for review of directed verdicts, this Court affirms the judgment of the district court that the lease clause disclaiming any express warranties and disclaiming any implied warranties of merchantability and fitness for a particular purpose by FMC Finance is not inconspicuous and is thus valid. This Court reverses, however, the judgment of the district court that FMC Finance and its parent, FMC Corporation, are separate corporations under the "piercing the corporate veil" doctrine. On remand, the district court is to submit the issue of corporate separateness to the jury. If the jury finds that FMC Finance and FMC Corporation are the same corporate entity under the piercing the corporate veil doctrine, then the court shall reach the additional issues of whether FMC Corporation breached its express manufacturer's warranty of repair and replacement, and if so, whether the defendants as guarantors can assert the breach as a defense against FMC Finance in this suit on the guaranty.

## I. *Summary of the Facts*

In 1974 representatives of Perimeter Express, Inc., a closely held Georgia corporation, executed a lease agreement with FMC Leasing Corporation (FMC Leasing), a wholly owned subsidiary of FMC Finance, on six buses for its shuttle service. Perimeter's stockholders included defendant Albert

D. Murphree, Jr., a farmer and experienced businessman who provided the majority of the initial capital for Perimeter Express.

The shareholders had contacted the local distributor for the Motor Coach Division of FMC Corporation. This local dealer was able to locate and secure the purchase from other dealers of six demonstrator buses. The buses were the first manufactured by FMC Corporation in its attempt to convert its recreational vehicle line of business into a mass transit line of business. On the suggestion of the Motor Coach Division, the local dealer in Atlanta contacted FMC Corporation's wholly owned subsidiary, FMC Finance, concerning purchase financing, and arranged a meeting between the Perimeter Express representatives and the FMC Finance representatives at FMC Finance's corporate offices. After negotiations, the parties agreed to finance the buses through a leasing arrangement. FMC Finance provided the funds for FMC Leasing to purchase the six buses from the local dealer.

Perimeter Express as lessee agreed to pay FMC Leasing as lessor a monthly rental for thirty–six months with the right to purchase the six buses at the end of the lease term upon payment of an additional month's rent. In addition, to provide security for the financing, the Murphrees executed in favor of FMC Finance a personal unconditional guaranty of the lease obligation of Perimeter Express. During the negotiations leading to the lease agreement, FMC Finance officials telephoned the Motor Coach Division of FMC Corporation to discuss the suitability of the buses for the proposed shuttle service, the anticipated useful life of the buses, and the need for a suitable maintenance program to be followed by Perimeter Express. As a result of that discussion, FMC Finance inserted into the lease agreement a maintenance supervisory clause giving FMC Corporation's Motor Coach Division the right to approve and inspect the maintenance programs of Perimeter Express and, if the program fell below certain standards, the right to repossess the buses. Additionally, the lease expressly disclaimed all express and implied warranties including warranties of merchantability and fitness for a particular purpose. FMC Corporation as manufacturer issued an express warranty of repair or replacement on four of the six buses, and these manufacturer's warranties were assigned by FMC Leasing to Perimeter Express. Finally FMC Corporation executed a remarketing agreement with FMC Finance: if Perimeter Express defaulted on its lease obligation, FMC Finance had the option to make FMC Corporation pay off the remaining unpaid lease balance and bear the costs of repossession and remarketing.

In 1975, apparently dissatisfied with the performance of the buses, Perimeter Express defaulted on its lease obligation and subsequently returned the buses to the local distributor of FMC Corporation. After FMC Finance gave notice and demand for payment to Perimeter Express and the Murphrees, FMC Leasing assigned the lease to FMC Finance. FMC Finance then declared all unpaid monthly rentals immediately due and payable, and after this demand was refused FMC Finance sold the buses and sued Perimeter Express and the Murphrees for the deficiency in the United States District Court for the Northern District of Georgia. The suit against the Murphrees was dismissed for lack of in personam jurisdiction; Perimeter Express then filed a petition in bankruptcy.

After Perimeter Express was discharged from all its debts, FMC Finance instituted suit on the personal guaranty of the Murphrees in the United States District Court for the Northern District of Mississippi. The Murphrees alleged that the lease disclaimer of warranties was invalid because it was not conspicuous, and therefore asserted against FMC Finance the defense of breach of implied warranties. The Murphrees also contended that FMC Corporation's Motor Coach Division acted as agent of FMC Leasing and FMC Finance when the Motor Coach Division refused to honor the express–warranty–of–repair–or–replacement claims of Perimeter Express. By counterclaim the Murphrees made the related argument that FMC Leasing, FMC Finance, and

FMC Corporation had entered into a joint venture.[1] FMC Finance argued that the disclaimer was conspicuous, and that FMC Corporation and FMC Finance were separate corporations. The district court granted FMC Finance's motion for directed verdict on these grounds.

## II. Law to Be Applied

■ Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires federal courts when sitting in diversity to apply the law of the forum state. A federal court in a case governed by the Erie doctrine is also required to apply whatever conflict of laws rules would be applied by the forum state. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ The parties agree that the issues presented on appeal are governed by Illinois law. The lease contract itself provided that it was to be governed by Illinois law. Mississippi, the forum state for this case, recognizes that parties may legitimately control the choice of substantive law in a contract dispute as long as the state law selected bears a reasonable relation to the transaction. United States v. Biloxi Municipal School District, 219 F.Supp. 691, 695 (S.D. Miss.1963), aff'd sub nom. United States v. Madison County Board of Education, 326 F.2d 237 (5th Cir. 1963); Miss.Code Ann. § 75–1–105(1) (1972). See also Dunavent Enterprises, Inc. v. Ford, 294 So.2d 788, 791 (Miss.1974). Because of the sufficient contacts of this case with Illinois,[2] the lease contract validly invokes Illinois law.

## III. Validity of Warranty Disclaimer

### A. Disclaimer Conspicuousness

Illinois has adopted the Uniform Commercial Code and applies selected provisions of the U.C.C. to equipment leases. Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance, 49 Ill. App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285, 1289 (1977). The warranty disclaimer provisions of Ill.Ann.Stat. ch. 26, § 2–316 apply to equipment leases when the Illinois U.C.C. implied warranties are found applicable. Walter E. Heller, 8 Ill.Dec. at 828, 365 N.E.2d at 1290. Assuming without deciding that the U.C.C. implied warranties of merchantability and fitness for a particular purpose apply to this case, section 2–316(2) of the Illinois U.C.C. thus controls whether the warranty disclaimer in the lease agreement is valid.[3]

■ Section 2–316(2) provides that for a written disclaimer of the implied warranties to be valid, the disclaimer language must be "conspicuous." Section 1–201(10) defines a conspicuous writing as one that a reasonable person against whom it is to operate ought to have noticed. It further provides that a printed heading in capitals is conspicuous, and that language in the body of a form is conspicuous if it is in larger or other contrasting type or color.[4] The concept of conspicuousness is thus one of reasonable notice—whether the writing would have invited the attention of a reasonable person. Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc., 39 Ill.App.3d 48, 349

1. The Murphrees also argued that the personal guaranty contract was not supported by consideration. The district court found that consideration existed, and the Murphrees do not contest that ruling in this appeal.

2. These contacts include FMC Finance's corporate headquarters and principal place of business in Chicago, negotiation and signing of the lease at those offices, participation by Murphree in the lease negotiations, and the necessity of his personal guaranty in securing the financing.

3. FMC Finance claims that the implied warranties do not apply in this case because FMC

Finance was not a merchant with respect to the sale or lease of the buses, thus precluding the creation of the implied warranty of merchantability, and was not a skilled seller, negating the creation of an implied warranty of fitness for a particular purpose. It is unnecessary for this Court to reach those issues because even if the U.C.C. implied warranty provisions apply, the warranty disclaimer clause validly excludes both implied warranties.

4. That section also provides that whether a term or clause is conspicuous or not is a decision for the court.

N.E.2d 627 (App.Ct.1976); U.C.C. § 1–201, Official Comment 10.

■ Disclaimers of implied warranties are not favored by Illinois courts and are strictly construed against sellers. *Overland Bond & Investment Corp. v. Howard*, 9 Ill.App.3d 348, 292 N.E.2d 168 (1972). Therefore a writing is not conspicuous if it is only in slight contrast with the rest of the instrument. Since the concept of conspicuousness is one of reasonableness and notice, the circumstances play a crucial role in whether language is conspicuous. Where the disclaimer is in a commercial transaction involving experienced businesspersons rather than a consumer transaction involving ordinary purchasers, the concept of reasonableness under the circumstances depends on what a reasonable businessperson is expected to notice.

Section 4 of the lease agreement is the warranty disclaimer. That clause has a boldface heading "Warranties," and that boldface heading is larger than the boldface heading of the earlier and some of the later lease clause headings. The disclaimer language itself is in capital letters, though they are not boldface. No other lease clause has language that is in capitals.

■ Because of this contrast, the early positioning of the clause in the lease, and the business experience of Albert Murphree, this Court is satisfied that the disclaimer is so written and positioned that in examining the lease contract a reasonable businessperson such as Albert Murphree ought to have noticed its provisions. That Albert Murphree did not actually read the lease does not detract from the validity of the disclaimer. The concept of conspicuousness is what a reasonable person ought to have noticed and, as an experienced businessman, Albert Murphree is expected to have read the instrument that creates the obligation on which he unconditionally gave his personal guaranty.

■ Furthermore, the warranty disclaimer in this case is similar to that in *Walter E. Heller*, 8 Ill.Dec. at 828, 365 N.E.2d at 1290. In that case, a disclaimer appeared under the heading "Warranties" on the front of a two page equipment lease in larger type size than other provisions. The Illinois appellate court there held that the disclaimer was conspicuous. Under the circumstances here present this Court holds that since the warranty disclaimer language is conspicuous, it validly negates any implied warranties on the part of FMC Finance.

**B. *Disclaimer Unconscionability***

■ The Murphrees contend for the first time on appeal that the disclaimer provision is unconscionable. Appellate courts will generally not consider the assertion of an affirmative defense that was not raised in the district court. *Golden Oil Co. v. Exxon Co., U. S. A.*, 543 F.2d 548, 551 n. 3 (5th Cir. 1976); *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80, 82 (5th Cir. 1976). The exception is for pure questions of law when refusal to consider the issue would result in a miscarriage of justice. *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976). *See also Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Assuming without deciding that under this exception it is proper to address the unconscionability issue, this Court holds that the warranty disclaimer clause here is not unconscionable.

■ Illinois applies U.C.C. § 2–302, the unconscionability provision, to equipment leases. *Walter E. Heller*, 8 Ill.Dec. at 828, 365 N.E.2d at 1290. Section 2–302 provides that, if the court finds as a matter of law that the contract or any clause thereof is unconscionable at the time that the contract was made, the court can refuse to enforce the contract or the clause or limit the application of the clause; and if the contract or clause is claimed to be or appears to the court to be unconscionable the parties may submit evidence on the commercial setting, purpose, and effect to aid the court in that determination. The test is whether in light of general commercial background and commercial needs of the particular trade or case the clause is so one–sided that it is unconscionable under

the circumstances existing at the time the contract was made. U.C.C. § 2–302, Official Comment 1. The principle is one of preventing oppression and unfair surprise, and not the disturbance of the allocation of risks merely because of superior bargaining power. *Id.*

FMC Finance contends that a warranty disclaimer that meets the requirements of section 2–316 cannot be unconscionable under section 2–302. *See also* Leff, Unconscionability and the Code—The Emperor's New Clause, 115 U.Pa.L.Rev. 485, 516–28 (1967). There is some merit to this argument: the section 2–316 requirements protect the buyer from unexpected and unbargained for disclaimer language and thus preclude unfair surprise because the conspicuousness provides reasonable notice.

On the other hand, section 2–302 expressly applies to "any clause of the contract," and section 2–316 does not expressly state that all disclaimers meeting its requirements are immune from section 2–302. *See also* U.C.C. § 2–302, Official Comment 1 (of ten illustrative cases on unconscionability, seven of the listed cases involve warranty disclaimers). Furthermore, though the disclaimer may be conspicuous so that the buyer is aware of it, unconscionability may still exist if the disclaimer is oppressive. For example, the seller may refuse to bargain over the clause, not from mere superior bargaining power in allocating risks, but from grossly disparate bargaining power and lack of seller competition on warranties, making the disclaimer one–sided. *See, e. g., Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960); *Zabriskie Chevrolet v. Smith*, 99 N.J.Super. 441, 240 A.2d 195 (Law Div. 1968); *Jefferson Credit Corp. v. Marcano*, 60 Misc.2d 138, 302 N.Y.S.2d 390 (Civ.Ct.1969).

Although section 2–302 could apply to a warranty disclaimer meeting the requirements of section 2–316, cases finding warranty disclaimers unconscionable are often the result of a misapplication of U.C.C. § 2–719(3). That provision authorizes courts to strike down a clause that limits or excludes consequential damages if it is un-

conscionable, and that limitations on consequential damages for personal injury (but not for commercial loss) are prima facie unconscionable. The misapplication flows from a misunderstanding of the difference between a warranty disclaimer and a limitation on consequential damage remedies. The consequential damage remedy is separate from creation of liability by a warranty. Warranty disclaimer is a defense to the existence of a cause of action, while the consequential damage limitation merely restricts remedies once the breach has been established. If there is no warranty because of a valid disclaimer, there is no problem of limiting warranty breach remedies. U.C.C. § 2–316, Official Comment 2.

While Illinois courts will readily apply the unconscionability doctrine to contracts between consumers and skilled corporate sellers, they are reluctant to re–write the terms of a negotiated contract between businessmen. *Walter E. Heller*, 8 Ill.Dec. at 827, 365 N.E.2d at 1289. *See also Neal v. Lacob*, 31 Ill.App.3d 137, 334 N.E.2d 435, 439–40 (1975) (absent fraud, mistake, or duress, Illinois courts hesitate to strike down contracts between businessmen). In *Walter E. Heller*, 8 Ill.Dec. at 827–28, 365 N.E.2d at 1289–90, the appellate court held that while a conspicuous warranty disclaimer in an equipment lease can be unconscionable, in that case it was not so totally one–sided or oppressive as to be unconscionable.

Because this case involves a commercial transaction that was a product of extensive negotiation, and because there does not appear to be any grossly disparate bargaining power or lack of competition among sellers on warranties, this Court holds that the otherwise valid warranty disclaimer is not unconscionable.

## IV. *Piercing the Corporate Veil*

The Murphrees assert that FMC Finance and its parent, FMC Corporation, should be considered as one entity under the doctrine of "piercing the corporate veil." If they are one entity, and assuming FMC Corporation breached its express man-

ufacturer's warranty of repair or replacement, the Murphrees would then be able to assert against FMC Finance the affirmative defense of the parent corporation's breach. Under the *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969), standard for review of directed verdicts, this Court holds that because there was sufficient evidence to create a jury question on this issue, the district court erred in granting FMC Finance's directed verdict. Accordingly, the district court on remand shall submit to the jury the question of corporate entity disregard,[5] and if the jury finds that FMC Finance and FMC Corporation are to be considered one entity, the court is then further directed to reach the issues of the alleged breach of the express warranty and whether the defendants as guarantors may assert the buyer's breach of warranty defense.

 A corporation is a legal entity existing separate and distinct from its shareholders, officers, and directors, who as a general rule are not liable for the corporation's debts and obligations. *Divco–Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.*, 45 Ill.App.2d 192, 195 N.E.2d 287 (1963). In rare, special circumstances, however, courts will "pierce the corporate veil" contrary to the established principle of corporate limited liability. *American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 413 (N.D.Ill.1970).

 Illinois courts follow the general rule concerning when the corporate entity may be disregarded. *See, e. g., People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 277 N.E.2d 844 (Ill.1971); *Berlinger's, Inc. v. Beef's Finest, Inc.*, 57 Ill.App.3d 319, 14 Ill.Dec. 764, 372 N.E.2d 1043 (1978). The case presented to this Court, however, presents a peculiar fact situation not yet decided by the Illinois Supreme Court. The corporate disregard doctrine in the context of parent and subsidiary corporations is usually invoked by a plaintiff to hold the parent liable for the injurious acts of the subsidiary. In this case, the defendants seek to hold the subsidiary liable for the parent's alleged injurious act–breach of warranty–by asserting the parent's breach as an affirmative defense to the subsidiary's guaranty contract suit.

 This is not to say that the corporate disregard doctrine does not apply to attempts to make the subsidiary liable for the acts of the parent. In *Kingston Dry Dock Co. v. Lake Champlain Transport Co.*, 31 F.2d 265, 267 (2d Cir. 1929), Judge Learned Hand stated that "[p]erhaps it would be too much to say that a subsidiary can never be liable for a transaction done in the name of the parent . . . . Any person may use another as a screen, and one may conceive cases where such an arrangement might exist." Under the rule of *Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), difficulty ascertaining what the state Supreme Court may subsequently determine state law to be is not by itself a sufficient ground for a federal court to decline to decide a case properly within diversity jurisdiction. This Court therefore proceeds to decide this question.[6]

---

5. Under *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), if a valid Federal Rule of Civil Procedure is applicable, then, under the preemption clause of the Rules of Decision Act, the Rule controls despite contrary state law. Fed.R.Civ.Pro. 39(a)(2) provides that in jury cases the court shall decide issues for which there is not a right of jury trial under the United States Constitution or a federal statute. Thus, whether the judge or jury decides an issue is one of federal law, with no *Erie* analysis problems. This Court holds that the issue of corporate entity disregard is one for the jury. *See Byrd v. Blue Ridge R. E. C., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (federal policy favoring jury decisions of disputed fact questions in diversity cases); *Del-*

champs, Inc. v. Borkin, 429 F.2d 417 (5th Cir. 1970) (corporate disregard question in contract case properly submitted to jury); *Continental Casualty Co. v. United States*, 308 F.2d 846 (5th Cir. 1962) (proper to submit to jury question whether corporation was sham and subterfuge). *See also Berlinger's, Inc. v. Beef's Finest, Inc.*, 57 Ill.App.3d 319, 14 Ill.Dec. 764, 769, 372 N.E.2d 1043, 1048 (1978) (when corporate entity disregarded it is considered an aggregate of persons both in law and equity).

6. FMC Finance disputes whether the issue of corporate separateness is properly before this Court on appeal. To decide the issue it generally must have been presented to the trial court for its consideration and determination. The

■ Because the doctrine is essentially equitable in character, the conditions under which a corporate entity may be disregarded vary, depending upon the circumstances in each case. *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill.App.3d 23, 20 Ill.Dec. 230, 234, 379 N.E.2d 1298, 1302 (1978). It is therefore inappropriate to attempt to apply any verbalization of the test in a mechanical manner. *See* Hamilton, *The Corporate Entity*, 49 Texas L.Rev. 979 (1971); Comment, *Disregarding the Corporate Entity: Contract Claims*, 28 Ohio St.L.J. 441 (1967).

■ The Murphrees are in essence attempting to hold the subsidiary responsible for the acts of the parent.[7] The reversal of the usual configuration—holding the parent liable for the subsidiary's acts—is one of those cases when the usual factors looked to are inappropriate. Drawing from Illinois corporate disregard cases, this Court finds that the district court should have submitted this issue to the jury.

■ The common verbalization of the corporate disregard test is that there must be such unity of interest and ownership that the separate personalities of the corporation and the shareholder no longer exist, and adherence to the fiction of separate corporate existence would under the circumstances sanction a fraud or promote injustice. *Stap v. Chicago Aces Tennis Team, Inc.*, 20 Ill.Dec. at 233, 379 N.E.2d at 1301. To find the parent liable for the acts of the subsidiary, it must be shown that there is control by the parent to such a degree[8] that the subsidiary has become a mere "alter ego" or "instrumentality." *Dregne v. Five Cent Cab Co.*, 381 Ill. 594, 46 N.E.2d 386, 390–91 (Ill.1943).

As noted by Judge Learned Hand in *Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*, 351 F.2d at 267, when the attempt is to hold the subsidiary liable for the acts of the parent, there is factually no way that the subsidiary can interpose itself in the conduct of the parent's affairs. Abandonment of the total domination or "instrumentality" factor is clearly required in cases seeking to hold the subsidiary liable for the acts of the parent. It is more appropriate in these cases to require, as a necessary but not sufficient condition for finding liability, only that there be a *control relationship* between the parent and the subsidiary. *Cf., e. g., American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 415 (N.D.Ill.1970) (neither ownership of all of the stock of a subsidiary nor identity of officers and directors, nor both combined, are sufficient to justify piercing the corporate veil absent additional factors); *Divco–Wayne Sales Fi-*

defendants asserted at trial that FMC Corporation's Motor Coach Division acted as agent of FMC Leasing when the Motor Coach Division allegedly breached the express warranty of repair or replacement. The Murphrees also asserted that FMC Finance, FMC Leasing, and FMC Corporation's Motor Coach Division entered into a joint venture to sell, lease, and finance sales of motor coaches, and that by entering into the joint venture FMC Finance ratified and adopted the express warranty and any implied warranties made by FMC Corporation's Motor Coach Division. Although the Murphrees were not arguing the corporate disregard theory, FMC Finance in its motions took their assertion of agency to be the nontechnical use and assumed that defendants were asserting the corporate disregard doctrine. The trial court thus had before it arguments by FMC Finance that the corporate disregard doctrine should not apply, and apparently decided in favor of FMC Finance on that basis by granting the directed verdict. The trial court also had the corporate disregard doctrine before it in the Murphrees' motion for new trial. Therefore,

this Court finds that the issue of corporate disregard was properly before the district court and therefore is properly before this Court on appeal.

7. Although defendants rather than plaintiffs assert the disregard doctrine; they are asserting it as an affirmative defense. For purposes of corporate disregard analysis, the position of the parties seeking to "pierce" as defendant or plaintiff is irrelevant.

8. This degree of control amounts to total domination of the subsidiary by the parent. *Krivo Industrial Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098, 1106 (5th Cir. 1973). The factors used to find domination are set forth in *Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693, 704–05 (10th Cir. 1938), *rev'd on other grounds*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). *See also American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 414–16 (N.D.Ill.1970).

nancial Corp. v. Martin Vehicle Sales, Inc., 45 Ill.App.2d 192, 195 N.E.2d 287, 289 (1963) (parent–subsidiary relationship alone will not render subsidiary liable on parent's contract).

■ The sufficient condition for liability in this type of case is implied misrepresentation in the extension of credit. In this case, the Murphrees and Perimeter Express became creditors of FMC Corporation to the extent they were relying on its creditworthiness to honor its express warranty. A creditor has the duty to first ascertain the creditworthiness of the corporation he voluntarily deals with, and assumes the risk of possible default by that corporation when he extends credit. *See Kingston Dry Dock Co.*, 31 F.2d at 267; Hamilton, *supra* at 984; Comment, *supra* at 461. When the shareholder or affiliate, however, engages in conduct likely to create in the creditor the reasonable expectation that he is extending credit to an economic entity larger than the corporation he actually contracted with, and the creditor reasonably relies to his detriment on his reasonable belief concerning who or what he was dealing with, then the corporate veil can be pierced. *See American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. at 416; *Berlinger's, Inc. v. Beef's Finest, Inc.*, 14 Ill.Dec. at 770, 372 N.E.2d at 1049; *Divco–Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.*, 195 N.E.2d at 289, 290 (1963); Posner, *The Rights of Creditors of Affiliated Corporations*, 43 U.Chi.L.Rev. 499, 520–23 (1976); Hamilton, *supra* at 985–87, 992–93; Comment, *supra* at 452–54.

■ The Illinois appellate courts recognize the inherent misrepresentation that can occur when a creditor deals with corporate affiliates, especially when the affiliates are engaged in related lines of business.[9] For example, in *Divco–Wayne Sales Finan-*

cial Corp. v. Martin Vehicle Sales, Inc., 195 N.E.2d at 289–290, the parent–Divco–Wayne Corporation–manufactured vehicles. The subsidiary–Divco–Wayne Sales Financial Corporation–financed sales of the parent's vehicles. In reviewing a grant of a counterclaim against the subsidiary for monies owed by the parent, the Illinois appellate court noted that confusion often results from the operation of various related corporations, especially when similar sounding names are used. *See also S. O. S. Co. v. Bolta Co.*, 117 F.Supp. 59 (N.D.Ill.1953) (confusingly similar names). The *Divco–Wayne* court stated, however, that similar names are alone not enough for liability; there must be some holding out that misleads or tends to lull one into a mistake of fact.

In *Divco–Wayne*, the court found that the creditor of the parent had not been confused or misled by the existence of the two corporations. Similarly, in *Franklin Process Co. v. Western Franklin Process Co.*, 308 Ill.App. 302, 31 N.E.2d 364, 368 (1941), the Illinois appellate court refused to prefer the claims of the liquidating subsidiary's other creditors over the parent's loan to its subsidiary absent *inter alia* misrepresentations by the parent causing the creditors to extend credit to the subsidiary.

■ In the case at hand, the names–FMC Corporation, FMC Finance Corporation, and FMC Leasing Corporation–are similar. As noted, similar names are not enough absent other factors. Sufficient other factors exist to create a jury question. For example, FMC Finance provided the complement of sales financing for FMC Corporation's vehicle sales in this transaction.[10] *See Divco–Wayne Sales Financial Corp.*, 195 N.E.2d at 289. FMC Leasing, FMC Finance, and FMC Corporation maintain offices at the same address, in a build-

---

9. Related lines of business exist when each line produces goods that are substitutes for or complements to the other line's goods. Posner, *supra* at 521. Beef and mutton are substitute products, while tennis rackets and tennis balls are complementary products. Financing for sales of the manufactured product is in essence a complement to that product.

10. FMC Finance provides financing for approximately 60% of the sales of FMC Corporation, its subsidiaries and related dealers. FMC Finance also provides financing for business unrelated to FMC Corporation.

**424**

ing owned by FMC Corporation. *See Holland v. Joy Candy Manufacturing Corp.*, 14 Ill.App.2d 531, 145 N.E.2d 101, 103–04 (1957). Perimeter Express was not a financial lender, or even a regular trade creditor, but merely a contract warranty obligation creditor of FMC Corporation; Albert Murphree thus had less incentive and specialization in appraising credit risk than a financial lender or trade creditor. *See* Posner, *supra* at 522–23. FMC Financing and FMC Corporation were extensively involved in the transaction between FMC Leasing and Perimeter Express.[11] In light of the foregoing, there is sufficient evidence to submit to the jury whether or not a reasonable person in the Murphrees' position would have been led to believe that FMC Finance was a party to the express warranty contract.

This, of course, does not mean that there is sufficient evidence to require a jury verdict in favor of the Murphrees on this issue. That is for the jury to decide.

The district court is affirmed on its directed verdict on the validity of the warranty disclaimer, but is reversed on the directed verdict on piercing the corporate veil. The court is directed to conduct proceedings on remand consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

11. For example, FMC Corporation's Motor Coach Division received the right to supervise Perimeter Express' maintenance program, and the right to repossess the buses if the program was not adhered to. FMC Finance consulted with the Motor Coach Division to determine the proper length of the finance period and the proper maintenance schedule. FMC Corporation's local dealer, on the suggestion of the Motor Coach Division, contacted FMC Finance and arranged the meeting between them and the Perimeter Express shareholders.