**CANTIERE DiPORTOVENERE PIESSE S.p.A.**

v.

**Jerome J. KERWIN and Helen Kerwin.**

**Civ. A. No. 86–2895.**

United States District Court, E.D. Pennsylvania.

May 4, 1990.

---

1. However, the intervening defendant presented no evidence to support this assertion.

Stephen M. Calder, Palmer, Biezup & Henderson, Philadelphia, Pa., for plaintiff.

Roger D. Susanin, John H. Widman, McAleese, McGoldrick & Susanin, P.C., King of Prussia, Pa., for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Cantiere DiPortovenere Piesse (Cantiere) brought this action for recovery of a judgment in the amount of $190,981.33 obtained against NRG Enterprises, Inc. (NRG). Discovering that the corporation was insolvent, plaintiff filed the instant lawsuit[1] against Jerome Kerwin, sole shareholder of NRG, and Helen Kerwin, an officer of the corporation, alleging, *inter alia*, that NRG was a sham corporation over which the Kerwins had exercised total control, rendering the corporation insolvent by plundering and/or converting corporate assets. A trial was held in January 1989, and a jury returned a verdict against the defendants, finding that the actions of both defendants constituted a disregard of the corporate entity known as NRG Enterprises. Accordingly, the jury found defendants personally liable for the NRG debt to Cantiere.

Before the court is the motion of the defendants for a new trial or in the alternative for judgment notwithstanding the verdict. For the reasons set forth below, de-fendants' motion will be denied in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

NRG Enterprises is a Pennsylvania corporation engaged in the business of "oil country tubular goods."[2] Jerome Kerwin was the chief executive officer and sole shareholder of NRG[3] and Helen Kerwin was the secretary of the corporation.[4] In the summer of 1981, NRG entered into a contract with plaintiff Cantiere DiPortovenere Piesse, an Italian joint stock company, in which Cantiere offered to sell and NRG offered to buy reject steel casings, a form of steel pipe.[5] A series of events followed[6] which culminated in plaintiff filing a lawsuit against NRG on January 14, 1983, alleging that NRG breached a contract for the purchase of 5,600 metric tons of seamless reject casing and asserting that NRG was indebted to Cantiere in the amount of $450,000.

A trial was held before the Honorable Louis H. Pollak of this court and Judge Pollak, after finding NRG Enterprises liable for breaching its contract with Cantiere,[7] entered judgment on October 15, 1985 against NRG in the amount of $125,852.59 plus 18 percent interest computed from December 1, 1982—the date of defendant's breach of its agreement with plaintiff—until the date of judgment (an amount calculated at $65,128.74), or the total amount of $190,981.33. Plaintiff contends that it was unable to collect the judgment against NRG because the corporation was insolvent.[8]

---

1. Jurisdiction is founded upon diverstiy of citizenship, 28 U.S.C. § 1332. Pennsylvania substantive law applies.

2. *See* Trial Transcript of January 5, 1989 at 71. Mr. Kerwin explained that "[o]il country tubular goods are the pipes that are used for drilling wells." *Id.*

3. *See id.* at 69.

4. *See* Trial Transcript of January 6, 1989 at 37.

5. *See Cantiere DiPortovenere Piesse S.p.A. v. NRG Enterprises, Inc.*, No. 83–0222 (bench opin-

ion issued by the Honorable Louis H. Pollak in transcript of July 19, 1985 at 3).

6. For a complete chronology of the events which led up to the underlying action, *see Cantiere DiPortovenere Piesse S.p.A. v. NRG Enterprises, Inc.*, No. 83–0222 (bench opinion issued by the Honorable Louis H. Pollak in transcript of July 19, 1985).

7. *See id.* at 19.

8. *See* Plaintiff's Complaint at ¶¶ 15–16.

**234**

On May 15, 1986, plaintiff instigated the present action against the defendants, alleging that Jerome Kerwin and Helen Kerwin were the alter egos of NRG Enterprises.[9] Plaintiff sought to pierce the corporate veil and recover the NRG judgment against defendants.[10] On July 10, 1986, defendants filed an answer to plaintiff's complaint denying plaintiff's allegations. In their answer, defendants demanded a jury trial and set forth nineteen affirmative defenses.[11] The case was tried before a jury and on January 9, 1989, the jury returned a verdict in favor of the plaintiff and against the defendant, assessing damages in the amount of $190,981.33.[12]

## II. DISCUSSION

### A. *Standard of Review*

 In order to grant a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, a court must find " 'that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " *Nebel v. Avichal Enterprises, Inc.*, 704 F.Supp. 570, 574 (D.N.J.1989) (quoting *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350 (4th Cir.1941)). The purpose of a Rule 59 motion is to allow the court to reevaluate the basis for an earlier decision. *Tevelson v. Life and Health Ins. Co. of America*, 643 F.Supp. 779, 782 (E.D.Pa.1986), *aff'd*, 817 F.2d 753 (3d Cir.1987). *See generally* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2805. The "decision to grant or deny a new trial is 'confided almost entirely to the ... discretion ... of the trial court,' " *Shanno v. Magee Industrial Enterprises, Inc.*, 856 F.2d 562, 567 (3d Cir. 1988) (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980)), and the court will "set aside the jury's verdict only if manifest injustice will result if the ver-

dict is allowed to stand." *Emigh v. Consolidated Rail Corp.*, 710 F.Supp. 608, 609 (W.D.Pa.1989). A new trial may be granted even where an entry of judgment notwithstanding the verdict is inappropriate. *Roebuck v. Drexel University*, 852 F.2d 715, 735–36 (3d Cir.1988).

 Federal Rule of Civil Procedure 50(b) permits a motion for judgment notwithstanding the verdict to be joined with a motion for a new trial. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 250–51, 61 S.Ct. 189, 193–94, 85 L.Ed. 147 (1940). A motion for judgment notwithstanding the verdict raises only the legal question of whether there was sufficient evidence to allow a reasonable juror to arrive at the verdict. *Link v. Mercedes–Benz of North America*, 788 F.2d 918, 921 (3d Cir.1986). A judgment notwithstanding the verdict may be granted only if, as a matter of law, "the record 'is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief.' " *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1034 (3d Cir.1988) (quoting *Link*, 788 F.2d at 921). In deciding the motion, the prevailing party is entitled to the benefit of all reasonable inferences to be drawn from the evidence and the court must determine whether that evidence affords "any rational basis for the verdict." *Bhaya v. Westinghouse Elec. Comp.*, 832 F.2d 258, 259 (3d Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Thus, a motion for judgment notwithstanding the verdict should be granted only when there is no evidence or reasonable inference to sustain the position of the non-moving party. *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1192–93 (8th Cir.1984).

In support of their motion for a new trial, or in the alternative for judgment notwithstanding the verdict, defendants fo-

---

**9.** *Id.* at ¶¶ 11–12.

**10.** *Id.*

**11.** *See* Defendants' Answer at 1–4.

**12.** The verdict was molded by the court to add interest on the sum due from the date of the original judgment to the date of the verdict so the total judgment effective January 9, 1989 is $228,057.85. (Document No 40).

cus on several issues. First, defendants argue that this court had no discretion to deny defendants' request on the eve of trial to waive their jury demand and proceed nonjury. Second, defendants submit that this court was not authorized to require that the case be tried by a jury [13] because the action was equitable in nature and the parties had not consented to a jury trial. Third, defendants assert that there was insufficient evidence to support the jury's verdict against both Jerome and Helen Kerwin. Finally, defendants contend that I was required to recuse myself and transfer this case to another judge because I was unable to preside impartially over the case. I will address each of these arguments seriatim.

## B. *Jury Trial Demand*

█ In their first pleading filed in the instant case, defendants demanded a jury trial. Accordingly, pursuant to Federal Rule of Civil Procedure 16, I issued a pretrial scheduling order dated July 7, 1988 which was fashioned specifically to effectuate the advancement of a jury case. The lawsuit proceeded through the entire discovery process as a jury case and was placed on the court's trial list on November 28, 1988.

The case was called for trial on January 3, 1989, at which time the defendants informed me that they wished to waive their jury demand and proceed with the case nonjury.[14] Defendants now argue that I erred because I had no discretion to deny their request on the eve of trial to proceed nonjury. I disagree. For more than two and a half years, this action proceeded, at defendants' request, as a jury case. Then, as jury selection was to begin, defendants requested that their jury demand be stricken and the case proceed nonjury. Their primary explanation for transforming the action into a nonjury case was that it would be more efficient due to what they believed was the technical nature of the action.[15] Because the management of the case would have been conducted in a wholly different manner had a jury trial not originally been demanded,[16] I believed that converting the action to a nonjury case on the eve of trial would cause a significant delay in the court's trial calendar because the parties had not complied with my standing pretrial scheduling order which would have been issued originally had no jury demand been made. Moreover, I determined that neither party would be prejudiced by proceeding with the case before a jury and that in fact it would be more expeditious at that stage of the case to proceed with a jury trial. Thus, I exercised my discretion "to effectuate a more speedy, efficient judicial determination of the case," 5 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 39.09, at 39–29 (2d ed. 1988), and denied

---

13. Defendants also argue that I did not inform them in a timely manner that, to the extent necessary for the equitable issues, I would utilize the jury as advisory pursuant to Federal Rule of Civil Procedure 39(c). I note that the parties were in fact given notice of my intention to use the jury in this way if necessary. *See* Trial Transcript of January 3, 1989 at 17; Trial Transcript of January 4, 1989 at 51. Because I will rule that the issue of piercing the corporate veil was properly submitted to the jury and that I need not have utilized Rule 39(c), I will not address the merits of this argument.

14. I was first advised by my courtroom deputy of the possible interest of the parties in proceeding nonjury just before the trial began. *See* Trial Transcript of January 4, 1989 at 48–50.

I did not, however, receive any formal written motion. Pursuant to this court's written instructions, which counsel received when the case was reassigned to my docket in June 1988,

all communication must be done *in writing* and comply with the Federal and Local Rules of Civil Procedure. Because I received no formal written motion or stipulation, I was not officially notified of the parties request to proceed nonjury until the first day of trial, January 3, 1989.

15. *See* Trial Transcript of January 3, 1989 at 15.

16. As I explained to the parties when I denied defendants' request to proceed non-jury, it is my custom to issue a completely different pretrial scheduling order in a nonjury case. *See* Trial Transcript of January 4, 1990 at 50. This scheduling order requires a far more rigorous schedule and directs that the parties file, *inter alia,* an extensive written stipulation of facts; precise and detailed proposed findings of fact and conclusions of law; a written list of the names and addresses of all witnesses with an offer of proof; a general offer of proof; and a trial memorandum.

defendants' request for a nonjury trial.[17] Because I believe now, as I believed at the time I made my ruling, that I possessed the discretion to deny defendants' request to strike their jury demand, I will deny their motion for a new trial on this ground.

## C. *Piercing the Corporate Veil*

■ Next, defendants argue that even if I did have the discretion to deny their eleventh hour request to proceed nonjury, I erred in submitting the only remaining claim in the case at the time it was submitted to the jury: piercing the corporate veil.[18] Thus, defendants contend that because plaintiff withdrew all its legal claims at the close of the evidence, with only the equitable claim of piercing the corporate veil remaining, it was inappropriate for this issue to have gone to the jury. Defendants' argument is without merit. Although the Third Circuit has never explicitly addressed the issue of whether a jury may properly hear the issue of disregard of the corporate entity, the Court of Appeals for the Second Circuit recently confronted this very issue and held that, while "the relief is equitable in nature, that is, imposing the remedy redresses a wrong by the expedient of ignoring the legal fiction that a corporation's existence is separate from that of its owner ... in fact, the issue of corporate disregard is generally submitted to the jury." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 59 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). *See FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 & n. 5 (5th Cir.1980); *Delchamps, Inc. v. Borkin*, 429 F.2d 417 (5th Cir.1970); *Continental Casualty Co. v. United States*, 308 F.2d 846 (5th Cir.1962). *Accord David v. Glemby Co., Inc.*, 717 F.Supp. 162, 166 (S.D.N.Y.1989); *Banco De Desarrollo*

*Agropecuario, S.A. v. Gibbs*, 709 F.Supp. 1302, 1309 (S.D.N.Y.1989). Moreover, the weight of authority in this area directly contradicts defendants' contention that it was improper to submit the question of corporate disregard to the jury as courts regularly submit this factual issue to the jury. *See, e.g., Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1133 (5th Cir.1988); *Mackey v. Burke*, 751 F.2d 322, 326–27 (10th Cir.1984); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984); *Cunningham v. Rendezvous, Inc.*, 699 F.2d 676, 680 (4th Cir. 1983); *Essex Engineering Co. v. Credit Vending, Inc.*, 732 F.Supp. 311 (D.Conn. 1990); *Omni–Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644, 648 (D.Mass.1989); *Commodore Business Machines, Inc. v. Blackley, Hatch, Townsend, Winborg and Zurn, Inc.*, No. 85–2210, 1985 WL 4476 (E.D.Pa. Dec. 11, 1985) (LEXIS, Genfed library, Dist. file). *But see, e.g., United States v. Golden Acres, Inc.*, 684 F.Supp. 96, 103 (D.Del.1988) ("[u]nder the law of Delaware, a state which staunchly maintains the division of law and equity," piercing the corporate veil should not be decided by jury).

Accordingly, I find no error in submitting to the jury the factual issue of piercing the corporate veil and defendants' motion for a new trial on this ground is therefore denied.[19]

## D. *Insufficiency of the Evidence*

■ Defendants contend that there is no evidence in the record to support the jury's verdict that the corporate entity known as NRG Enterprises should be disregarded and the defendants held personally liable for the debts of the corporation. To examine whether there is in fact sufficient evidence in the record to support the jury's

---

**17.** *See* Trial Transcript of January 4, 1989 at 51.

**18.** At the close of the evidence, plaintiff withdrew all remaining claims except for the claim of piercing the corporate veil. *See* Trial Transcript of January 6, 1989 at 150.

**19.** Because I have found that the issue of piercing the corporate veil was properly placed before the jury, and because I did not use the jury

as advisory pursuant to Federal Rule of Civil Procedure 39(c), I need not address defendants contention that I could not use the jury's verdict as advisory at the conclusion of trial despite the fact that I placed defendants on notice that I would consider using the jury in an advisory capacity to the extent necessary to resolve the equitable issues.

finding that the corporate form of NRG should be disregarded, it is helpful to review the circumstances under which the law allows the corporate veil to be pierced. It is well established that "[t]he concept of distinct corporate entity has long served useful business purposes, encouraging risktaking by individual investors as well as overall convenience of financial administration." *Valley Finance, Inc. v. United States,* 629 F.2d 162, 171 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). This legal fiction of a separate corporate identity evolved in the interest of convenience and justice, and ordinarily, such considerations justify treating the corporation as an independent entity. Accordingly, corporate veils "should be pierced only reluctantly and cautiously." *Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557, 1576 (10th Cir.1990). However, when the corporate form is abused, "[c]ourts have not hesitated to ignore the fiction of separateness and approve a piercing of the corporate veil when the corporate device frustrates clear intendment of the law." *Id.* In *Ashley v. Ashley,* 482 Pa. 228, 393 A.2d 637 (1978), for example, the Pennsylvania Supreme Court, finding that the lower court erred, pierced the corporate veil of a corporation after it established that its owner had commingled his personal interests with that of the corporation. *Id.* 482 Pa. at 237–38, 393 A.2d at 641. In holding that the corporate entity should be disregarded, the court set forth the following standard for piercing the corporate veil:

> Th[e] legal fiction of a separate corporate entity was designed to serve convenience and justice, and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. We have said that *whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her personal interests, the fiction of the separate corporate identity may properly be disregarded.*

*Id.* 482 Pa. at 237, 393 A.2d at 641 (citations omitted) (emphasis added).

In support of their argument that there was insufficient evidence from which the jury could properly have found that the corporate entity has been disregarded, defendants point to what they believe is a complete absence of evidence of fraud in the record. Defendants erroneously believe that, absent fraud, it is improper to pierce the corporate veil. This is clearly not the law. Under Pennsylvania law, it is well settled that "an element of fraud is not necessary to pierce the corporate veil." *River Road Development Corp. v. The Carlson Corporation,* No. 89–7037, 1990 WL 6092 (E.D.Pa. Jan. 25, 1990) (1990 U.S. Dist. LEXIS 888, * 9). In fact, Pennsylvania has explicitly considered and rejected the notion that a specific showing of fraud is a condition precedent to corporate disregard. *Village at Camelback v. Carr,* 371 Pa.Super. 452, 461–62, 538 A.2d 528, 533 (1988) (no overriding restriction on piercing the corporate veil to situations where such is necessary to prevent a fraud), *aff'd,* —— Pa. ——, 572 A.2d 1 (Pa. 1990); *Rinck v. Rinck,* 363 Pa.Super. 593, 597, 526 A.2d 1221, 1223 (1987) (finding of fraud not required; scope of rule permits disregard of corporate entity whenever necessary to avoid injustice).[20]

Having found that fraud is not required before the corporate veil could be disregarded, I turn to whether there was sufficient evidence in the record to support the jury's verdict that Jerome and Helen Kerwin disregarded the corporate formalities of NRG Enterprises. I note at the outset that it is a basic tenet of procedural jurisprudence that, while examining the propriety of a jury's verdict, "[a] district court's discretion *is* limited in that the court may not replace its opinion for that of the jury." *Nebel v. Avichal Enterprises, Inc.,* 704 F.Supp. 570, 574 (D.N.J.1989) (emphasis in original). *See also H.L. Moore Drug Ex-*

---

20. *Accord Cunningham v. Rendezvous, Inc.,* 699 F.2d 676, 680 (4th Cir.1983) (fraud is not a prerequisite to finding of disregard of corporate entity); *Valley Finance, Inc. v. United States,* 629 F.2d 162, 172 (D.C.Cir.1980) (evidence of plain fraud probative, though not a prerequisite), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

**238**

change v. Eli Lilly and Co., 662 F.2d 935, 940 (2d Cir.) (court may not substitute its view of the evidence with that of the jury), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1981). Thus, because the jury's verdict carries with it a strong presumption of correctness, it should not be disturbed unless the trial judge is of the opinion that a "manifest injustice will result if the verdict is allowed to stand." Emigh v. Consolidated Rail Corp., 710 F.Supp. 608, 609 (W.D.Pa.1989).

■ After a careful examination of the record, I find that there is ample evidence in the record from which a jury could reasonably conclude that *both* defendants [21] disregarded the fiction that NRG Enterprises was an entity separate and distinct from them. In fact, the evidence of plaintiff's expert and summary witness Mr. Campos *alone*, if believed by the jury, could support the jury's verdict.[22] In his testimony, that expert painstakingly went through voluminous documents, discussing specific instances in which defendants appeared to completely disregard the corporate formalities of NRG Enterprises. Indeed, having extensively reviewed the financial statements and tax returns of NRG, Mr. Campos was asked what those documents indicated to him regarding the

management of the corporation. Mr. Campos responded as follows: "They indicate to me, and support the conclusion that I have reached, that the two entities, NRG Enterprises, Inc., and the individuals, Mr. and Mrs. Kerwin, were operating as one entity and that the corporation was used for personal reasons." Transcript of January 4, 1989 at 160–61. Of course, defendants presented an expert witness as well, and it was certainly possible that the jury could have in fact concluded that either or both of the Kerwins did *not* disregard the corporate formalities. That, however, was the jury's decision to make and, having found the verdict amply supported by the evidence, I am not permitted "to inquire into the 'presumptions and inferences' that 'flow from' the jury's finding[s]." *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 180 (5th Cir.1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). Accordingly, the jury's verdict must not be disturbed and defendants' motion for a new trial based upon sufficiency of the evidence must be denied.

### E. Obligation to Recuse

■ During pretrial discussions with counsel, I expressed some concern over trying this case nonjury and noted that be-

**21.** Defendants contend that because Mrs. Kerwin was not an owner or dominant shareholder of NRG, she could not, as a matter of law, be found personally liable for the corporation's debts. I find this argument without merit. Helen Kerwin was an officer of NRG Enterprises. Although defendants characterize Mrs. Kerwin as a "gal Friday," and claim that she was an officer in title only, there is sufficient evidence in the record from which a jury could reasonably conclude that she played a more active role than defendants contend. There is clearly credible evidence which establishes that Mrs. Kerwin did in fact participate in aspects of the financial operations of the corporation such as signing checks. Moreover, the record is packed with examples of how both Jerome Kerwin *and* Helen Kerwin were treating the corporation as their own, often making personal payments from NRG for their benefit and recording them as expenses of the corporation.

I note that in instructing the jury, I was extremely careful in articulating that they were required to find more than the fact that Mrs. Kerwin was an officer of NRG Enterprises. The jury was specifically instructed that they must

first find that Mrs. Kerwin engaged in certain conduct before they may find personal liability. The jury was charged as follows:

[I]f you find that Mrs. Kerwin engaged in such acts or omissions or used her position as an officer of the corporation or used corporate money in a way which ignored the existence of NRG Enterprises as a corporation and that she in fact participated in the business of the corporation as an individual exercising personal control over the operation of that corporation such that the corporate existence was disregarded by her and therefore that Mrs. Kerwin's own personal interests cannot be reasonably separated from the business interests of the corporation, then you may find Mrs. Kerwin personally liable to the plaintiff.

*See* Trial Transcript of January 9, 1989 at 70.

**22.** I note that this is not the only evidence in the record which supports the jury's verdict. On the contrary, the defendants' own testimony as well as NRG's financial records all provide ample evidence that the defendants disregarded the corporate formalities of NRG.

cause of the manner in which the defendants behaved while they did not have a lawyer and the procedural annoyances which arose from that contact, I would prefer to try the case before a jury as originally demanded by defendants. *See* Trial Transcript of January 3, 1989 at 11. At defendants' request, I explained further my concerns regarding my past relationship with defendant Jerome Kerwin:

> I have no bias against [Mr. Kerwin]. It's just an annoyance with the way he handled himself both in writing and in appearance before me based primarily on the fact that he represented to the Court that he could not afford a lawyer and, therefore, didn't have counsel of record and implied he didn't anticipate having counsel of record and saying in this very room, "I'm confused by these procedures."
>
> . . . .
>
> And it turns out that my suspicions were correct, and I don't think that it's illegal or unethical, probably, for Mr. Widman to be giving advice informally to Mr. Kerwin, but for Mr. Kerwin to come to me and say I don't have a lawyer when it's obvious that the papers he was filing had been prepared, or at least suggested in language, of an experienced lawyer, annoyed me. I'm not saying I have any notion of how the case should come out. That's what I meant by that. It's more annoyance than anything, and it gave me some further concern over having to decide the case nonjury.

Trial Transcript of January 3, 1989 at 18–19.

Defendants now argue that my candid discussion with counsel regarding Mr. Kerwin's behavior during the pretrial stages of this case required that I recuse myself as trial judge [23] pursuant to 28 U.S.C. § 455.[24] It is clear that neither this statute nor any other required recusal in this case. This Circuit has firmly established that 28 U.S.C. § 455 imposes no obligation upon a presiding judge to recuse himself from a case unless extrajudicial bias exists. *Johnson v. Trueblood*, 629 F.2d 287, 290–91 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). " 'Extrajudicial bias' refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Id. See also United States v. Sciarra*, 851 F.2d 621, 634 n. 28 (3d Cir.1988). "The relevant inquiry is whether the trial judge's pretrial comments were linked to his evaluation of the case based on the pleadings and other materials outlining the nature of the case, or whether the comments were based on purely personal feelings towards the parties in the case." *Johnson*, 629 F.2d at 291. Because it is clear that my remarks concerning Mr. Kerwin's behavior during the period when he was not represented by counsel were limited to his conduct before *this* court in *this* case, and because I did not then, nor do I now have any personal or professional bias towards him or Mrs. Kerwin, I find that absolutely no extrajudicial bias was present and therefore, I reject

**23.** I note at the outset of this discussion that defendants *never* requested that I recuse myself from this case. Thus, to the extent that they failed to object to my remaining as trial judge, and thus failed to preserve their objection, it is questionable whether they are precluded from raising the recusal issue at this time. *See* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2805 at 39. *See also Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 375 (5th Cir.1989) (court of appeals reluctant to address for first time on appeal alleged errors not objected to in trial court); *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir.1988) (party waived objection to improper closing argument by opposing counsel because of failure to object at time of argument). Nevertheless, because of the sensitive nature of defendants' allegations, and because I believe it is clear that

I was not, at any time prior to, during the trial, or up to the present time, obligated to recuse myself as trial judge, I will explain my reasons for finding that defendants' allegation that I should have recused myself is without merit.

**24.** 28 U.S.C. § 455 provides, in pertinent part, as follows:

> (a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself ... [w]here he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

defendants contention that I was required to recuse myself from this case. Accordingly, defendants motion for a new trial on this ground is denied.

For the reasons outlined in the foregoing memorandum, defendants motion for a new trial, or in the alternative for judgment notwithstanding the verdict, is denied.