In the Matter of iPCS, INC., iPCS Wireless, Inc., and iPCS Equipment, Inc., Debtors.

Official Committee of Unsecured Creditors of iPCS, Inc., iPCS Wireless, Inc., and iPCS Equipment, Inc., Plaintiffs,

v.

Sprint Corporation, Sprint Spectrum, L.P., Wirelessco, L.P., and Sprintcom, Inc. Defendants.

Bankruptcy Nos. 03–62695–WHD, 03–62696–WHD, 03–62697–WHD. Adversary No. 03–6464.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 22, 2003.

Andrew G. Gordon, Esq., James H. Millar, Esq., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, E. Penn Nicholson, Esq., Powell, Goldstein, Frazer & Murphy LLP, Atlanta, GA, for Plaintiff or Petitioner.

Barry Coheen, Esq., Daniel J. King, Esq., King & Spalding, LLP, Atlanta, GA, for Defendant or Respondent.

## ORDER

W. HOMER DRAKE, JR., Bankruptcy Judge.

Before the Court is the Motion to Strike Jury Demand (hereinafter the "Motion"),

filed by the defendants, Sprint Corporation, Sprint Spectrum, L.P., WirelessCo, L.P., and SprintCom, Inc. (hereinafter collectively referred to as "Sprint"). The plaintiff in this adversary proceeding, the Official Committee of Unsecured Creditors of iPCS, Inc., iPCS Wireless, Inc., and iPCS Equipment, Inc. (hereinafter the "Committee"), opposes the Motion.

## BACKGROUND

On February 23, 2003, iPCS, Inc. (hereinafter "iPCS"), iPCS Wireless, Inc. (hereinafter "iPCS Wireless"), and iPCS Equipment, Inc. (collectively referred to hereinafter as the "Debtors"), filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since 1999, the Debtors, through certain management and services agreements with Sprint (hereinafter the "Management Agreement" and "Services Agreement"), have constructed, operated, managed, and maintained a wireless, personal communications network throughout the Midwest (hereinafter the "Network"). In accordance with the Agreements, the Debtors have the exclusive right to provide personal telecommunications services to customers under the Sprint and Sprint PCS brand names in the area covered by the Network. In turn, the contractual relationship allows Sprint to utilize the Network in order to its customers with a nationwide cellular telephone network.

On the same day the Debtors' petitions were filed, iPCS and iPCS Wireless filed a complaint against Sprint seeking equitable relief and damages. The Debtors allege that Sprint has breached the Management and Services Agreements by, among other things, failing to calculate the amount of the Collected Revenue in accordance with the terms of the Management Agreement. The Debtors also seek to force Sprint to purchase the Debtors' business for an amount to be determined in accordance with the terms of Agreements.

On April 29, 2003, the Committee filed an application for authority to file and prosecute a complaint against Sprint on behalf of the Debtors' bankruptcy estates. The Court granted the application on August 19, 2003, and the Committee filed its complaint on August 22, 2003. The Committee's complaint alleges that Sprint misused the Management and Services Agreements to gain substantial influence over the business operations and financial affairs of the Debtors, resulting in the Debtors' becoming "nothing more than mere instrumentalities, alter ego corporations and/or agents operating under the control and direction of" Sprint. Based upon these allegations, the Committee contends that Sprint should be held liable for the payment of the Debtors' debts under an alter ego/instrumentality theory of liability.

The Committee has demanded a jury trial, and Sprint has moved to strike that demand. Sprint contends that the Committee is bound by the terms of a jury waiver contained within the Management Agreement. Alternatively, Sprint argues that the Committee is not entitled to a jury trial in the first instance because its claim is purely equitable. In response, the Committee argues that its claim is not equitable and does not arise under the Management Agreement, and therefore, the terms of the Management Agreement have no bearing on the issue of whether the Committee is entitled to a jury trial.

## DISCUSSION

A. *Whether the Committee is Entitled to a Jury Trial*

 The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, where the value

in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." *See* U.S. CONST. AMEND. VII; *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).[1] In *Granfinanciera,* the United States Supreme Court stated "[w]e have consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined,' in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera,* 492 U.S. at 41, 109 S.Ct. 2782. Pursuant to the Court's direction in *Granfinanciera,* "[t]o ascertain whether a party has a Seventh Amendment right to a jury trial, a distinction must necessarily be made between legal and equitable claims." *In re RDM Sports Group, Inc.,* 260 B.R. 915, 919 (Bankr. N.D.Ga.2001) (Drake, J.). The analysis for drawing this distinction is comprised of a two-part test: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782.

In this case, Sprint asserts that the Committee's claims for liability are based upon a theory that sounds in equity rather than law. Sprint recognizes that, under the United States Supreme Court's holding in *Granfinanciera,* in some cases, an alter ego claim may be entitled to a jury trial. However, Sprint argues that, because the Committee does not seek monetary damages, the remedy sought by the Committee is equitable in nature, rather than legal, and, accordingly, its claim does not fall within that category. Sprint notes that the Committee is asking this Court to declare that Sprint utilized the Debtors as a mere instrumentality, and, therefore, should be held liable for the Debtors' debts. This, Sprint suggests, is declaratory relief, which is traditionally an equitable, rather than a legal, remedy. In support of its arguments, Sprint submits that the Committee itself has characterized its claim as one that arises under "well established principles of equity." Sprint further points to case law for the proposition that an alter-ego claim is traditionally one of equity, and, where both the claim and the nature of the remedy sought are equitable in nature, no right to a jury trial exists. *See In re Lee Way Holding Co.,* 118 B.R. 544 (Bankr.S.D.Ohio 1990); *United States v. Golden Acres,* 684 F.Supp. 96 (D.Del. 1988) (finding no right to a jury trial on a veil-piercing claim).

As to the first *Granfinanciera* factor, there is sufficient and persuasive authority for the proposition that an action to pierce the corporate veil "does not sound solely in equity." *William Passalacqua Builders, Inc. v. Resnick,* 933 F.2d 131, 136 (2d Cir.1991). In *Passalacqua,* the Second Circuit Court of Appeals concluded that it was proper for a district court to submit to a jury the issue of whether a parent corporation should be held liable, on an alter ego theory, for the actions of its subsidiary. *Id.* The court noted that the action was similar to "the second phase of the old creditors' bill procedure," by which a creditor would obtain a judgment against a corporation and seek to enforce that judgment against the shareholders of the corporation at law. *Id.* at 135–36. Accordingly, the court concluded that the action appeared to have "roots in both law and

---

**1.** Whether a party has a right to a jury trial in federal court is a question of federal law. *See FMC Finance Corp. v. Murphree,* 632 F.2d 413, 421 n. 5 (5th Cir.1980) (citing *Byrd v. Blue Ridge R.E.C., Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).

equity." *Id.* at 136; *see also In re Bonds Distributing Co., Inc.*, 2000 WL 33682815 (Bankr.M.D.N.C.2000) ("The weight of authority appears to recognize a right to jury trial with respect to claims seeking to pierce the corporate veil based upon the theories of alter ego or mere instrumentality."); *Cantiere DiPortovenere Piesse S.p.A.v. Kerwin*, 739 F.Supp. 231 (E.D.Pa. 1990) ("Moreover, the weight of authority in this area directly contradicts defendants' contention that it was improper to submit the question of corporate disregard to the jury as courts regularly submit this factual issue to the jury.") (citations omitted).[2]

As to the second factor, as noted above, Sprint argues that the nature of the remedy sought by the Committee is purely equitable because the Committee's complaint does not seek the entry of a money judgment against Sprint. In *Passalacqua*, the court appeared to disregard the fact that the complaint did not seek a judgment. In that case, the plaintiff had already obtained a money judgment against a subsidiary and was attempting to enforce that judgment against its parent corporation. In concluding that the nature of the remedy sought was legal, the court appears to have reasoned that the final remedy sought by the plaintiff was the payment of money. Presumably, the court found irrelevant the fact that the actual judgment at issue was neither sought nor obtained in that present action.

Here, as Sprint points out, the Committee's complaint does not request the entry of a judgment against Sprint. Notably, the Committee has instituted this action on behalf of the Debtors' bankruptcy estates, rather than its members. While the Committee's members possess claims against the Debtors, which could be reduced to judgments and later enforced against Sprint, the Debtors' bankruptcy estates have no such claims against the Debtors. Any money judgment that may eventually be asserted against Sprint in connection with debts owed by the Debtors will not be asserted against Sprint by the Debtors' bankruptcy estates, but by the individual creditors. In this regard, the facts of the instant case are distinguishable from those in *Passalacqua*.[3] Here, the true plaintiffs in this litigation are the Debtors' bankruptcy estates, and the bankruptcy estates are essentially asking the Court to declare that another party is responsible for payment of the debts of the estates. To the Court, this is a clear indication that the relief requested by the Committee in this case is entirely equitable.

■ As noted above, under *Granfinanciera*, the nature of the remedy sought is the most important consideration in determining whether a right to a jury trial exists. Here, the Court has determined that the nature of the claim is in part equitable and the remedy sought is entirely equitable. Accordingly, the Court must conclude that the Committee is not entitled to a jury trial in this case.

**2.** This result is consistent with an earlier holding of the Fifth Circuit Court of Appeals that constitutes binding precedent on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981). In *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 n. 5 (5th Cir.1980), the court, without analysis, held that "the issue of corporate entity disregard is one for the jury." However, for the reasons stated below, the Court is persuaded that, under the Supreme Court's holding in *Granfi-*

*nanciera*, the facts of this case demand a different result.

**3.** The opposite conclusion has been reached under similar facts. *See In re Bonds Distributing Co., Inc.*, 2000 WL 33682815, at *8 (Bankr.M.D.N.C.2000). However, the Court declines to follow the reasoning and conclusion of this decision.

B. *Whether Any Potential Right to a Jury Trial Has Been Waived*

■ Even assuming that the Committee is entitled to a jury trial, the Court is in agreement with Sprint that the Committee is bound by the Debtors' prior waiver of the right to a jury trial. Prior to the filing of the Debtors' bankruptcy petitions, the Debtors executed the Management Agreement. The Management Agreement contained a provision by which both parties agreed to waive any right they may have had to a jury trial. The provision at issue states as follows:

> **17.10 Waiver of Jury Trial** EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

Management Agreement, Section 17.10.

■ Sprint maintains that the waiver is broad enough to encompass the instant action. The Committee appears to concede that, if the waiver would bind the Debtors, it would also bind the Committee. However, the Committee argues that the waiver does not apply to its claim because the claim does not arise out of the Management Agreement within the meaning of the waiver provision.

The Court has reviewed the Committee's complaint and has determined that the Committee's claim would not exist but for the existence of the Management Agreement. Accordingly, the Court can only conclude that the claim arises, at least in part, from the Management Agreement, or, at the very least, is related to the Management Agreement. The Committee contends that Sprint has utilized the Debtors as mere instrumentalities of its own business. The Court presumes that, in order to do so, Sprint must have exerted significant influence on the Debtors' business operations. The Committee's complaint alleges that Sprint gained this control over the Debtors, at least in part, through the terms of the Management Agreement.

For instance, in its complaint, the Committee alleges that Sprint "has entered into contracts with so-called 'affiliates' like [the Debtors] to conduct the business of [Sprint]" and "[t]hrough the operation of these contractual agreements . . . [Sprint] has come to exert pervasive domination and control over the business activities of" the Debtors. Complaint, ¶ 2. The Committee has specifically asserted that Sprint has achieved its dominion and control over the Debtors, "in part, through the operation of one-sided contractual agreements." *Id.* ¶ 21; *see also* ¶ 25 ("Through operation of the Management Agreement and other relevant contracts between it and [the Debtor], [Sprint] has sought to insure that . . . [the Debtor] operates as a mere instrumentality or department of [Sprint's] own business . . . ."); ¶ 35 ("by and through the operation of these agreements, [Sprint] has assured itself an effective veto power over [the Debtors'] business affairs and operations, and, as a result, now has control of the very financial viability of [the Debtors themselves]. Throughout the complaint, the Committee points to specific examples of exactly how the Management Agreement provided Sprint with control over the Debtors' operations.") *See id.* ¶¶ 36, 37 (alleging that the contractual agreements between Sprint and the Debtors gave Sprint control over the Debtors' pricing, customer service standards, and quality technical requirements for the network); ¶ 38 (alleging that the Management Agreement gave Sprint control over the collection of the Debtors' revenue and

allowed Sprint to "arbitrarily determine and pay" the Debtors' share of the revenue).

After having reviewed the Committee's own allegations, the Court cannot conclude that the Committee's claim does not arise from the Management Agreement. As this Court earlier stated, the Committee's claim is based upon the theory that Sprint has gained control over the Debtors and has abused that control to the detriment of the Debtors and their creditors. The Court previously noted that the Committee has failed to allege that Sprint had any other means of controlling the Debtors, such as stock ownership. Therefore, it would appear that the only means that the Committee has alleged that Sprint could have controlled the Debtors came, at least initially, from the contractual relationship between the parties. The Court is at a loss to see how the Committee's claim of domination and control and the resulting abuse of that control does not arise, at least indirectly, from the Management Agreement. Consequently, the Court finds that the Committee should be bound by the terms of the waiver provision.

### CONCLUSION

Having given the matter its careful attention, the Court finds that Sprint's Motion to Strike the Committee's Jury Trial Demand should be, and hereby is, **GRANTED**. The Committee's demand for a jury trial is hereby **STRICKEN**.

**IT IS SO ORDERED.**